IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES E. CURTIS,

    Petitioner,

v.                                                                Civil Action No. 3:11CV445

HAROLD CLARKE,

    Respondent.

## MEMORANDUM OPINION

James E. Curtis, a Virginia prisoner proceeding *pro se*, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Curtis challenges his convictions for multiple sexual crimes against his underage step-daughter in the Circuit Court for the County of Spotsylvania. Respondent has moved to dismiss on the ground that Curtis's claims lack merit. Curtis has responded. The matter is ripe for disposition.

### I. CURTIS'S CLAIM

Curtis contends that he did not receive the effective assistance of counsel because:

| | |
|---|---|
| Claim 1(a) | Counsel "failed to explain and break down to the Petitioner, that based on his defense (black mailed, etc.), the Commonwealth could merely arguably prove the statutory charges dealing with the fact that the victim was under age." (§ 2254 Pet. 15.) |
| Claim 1(b)(i) | Counsel failed to interview: (1) Glona Jackson, "victim's special-ed teacher;" (*id.* at 16); (2)"Kaylan Brown & Carilan Brown (sisters) friends of the victim, whom [sic] know the . . . full name of 'Faith' the victim's best friend . . . (Faith) knows of the victim['s] sexual relations with her boyfriend ('D.J.') . . . ." (*Id.*) |
| Claim 1(b)(ii) | Counsel failed to obtain: (1) the victim's phone records; and (2) "all relevant documents which will support that the victim told several lies and that she at one time blamed a (tampon) for taking her virginity." (*Id.*) |

## II. PROCEDURAL HISTORY

### A.   The Guilty Pleas

On November 21, 2008, three days before his scheduled jury trial, Curtis pled guilty to one count of indecent liberties, two counts of rape,[1] two counts of forcible sodomy,[2] and two counts of aggravated sexual battery.[3] During his guilty plea proceedings, Curtis swore that no one had threatened him or coerced him into pleading guilty. (Nov. 21, 2008 Tr. 12.) Curtis further acknowledged that he had sufficient time to discuss the charges with his attorney and that he was pleading guilty because he was indeed guilty of the crimes charged. (*Id.* at 9–10.)

During his plea proceedings, Curtis asked the Court to accept the following stipulation of facts with respect to his offenses:

> K.Y., currently age 15, would testify that she has been having nonconsensual sex with her stepfather, Defendant, for the last four years. K.Y would testify that the sexual abuse first began when she was approximately eleven years old, when K.Y. asked Defendant if she could attend a swimming party at the YMCA and Defendant demanded that she "kiss him with tongue" so that she could go. K.Y. would testify that the next incident she could recall was the Defendant asking her if he could suck her breasts while she was folding laundry on the couch within their residence located in Spotsylvania County. K.Y. would

---

[1] One rape charge was brought under section 18.2-61(A)(i) of the Code of Virginia (against the will of the victim), and one charge was brought under section 18.2-61(A)(iii) of the Virginia Code which prohibits intercourse with a child under the age of 13.

[2] One charge was brought under section 18.2-67.1(A)(1) of the Virginia Code, which prohibits sodomy where the victim is less than 13 years of age. One charge was brought under section 18.2-67.1(A)(2), which prohibits sodomy against the will of the victim.

[3] One charge was brought under section 18.2-67.3(A)(1) which provides: "An accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he complaining witness is less than 13 years of age . . . ." Va. Code § 18.2-67.3(A)(1)(West 2005). One charge was brought under section 18.2-67.3(A)(3) of the Virginia Code, which provides: "An accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he offense is committed by a parent, step-parent, grandparent, or step-grandparent and the complaining witness is at least 13 but less than 18 years of age . . . ." *Id.* 18.2-67.3(A)(3)(West 2007).

testify that she next recalls a time when she was in sixth grade, age 11, that she accompanied Defendant to deliver papers and that they pulled over on a dirt road within Spotsylvania County. K.Y. would testify that Defendant made her sit on his lap and wanted to kiss her with tongue. K.Y. would testify that she said she did not want to do it, but that he did kiss her with tongue while sucking on her breast and touching her vagina with his fingers. K.Y. would testify that from on or about November, 2003, when she was age 11, through June, 2008, where she was age 15, Defendant penetrated her vagina with his penis more than one time per week for that four year period. K.Y. would testify that during that same time frame, K.Y. would perform oral sex on Defendant, where her mouth would touch his penis, at least one time per week for that four year period. K.Y. would testify that during this same timeframe [sic], Defendant penetrated her vagina with his tongue at least twenty times, and that Defendant penetrated her anus with his penis one time. K.Y. would testify that all of these incidents occurred within their residence located in Spotsylvania County. K.Y. would testify that he made her take a pregnancy test one time and that he took her to a gynecologist so that she could be placed on the birth control pill. K.Y. would testify that she first reported this sexual abuse to Bud Cloughley of the Department of Social Services ["DSS"] of Spotsylvania County on June 13, 2008. K.Y. would testify that she called Child Protective Services to report that Defendant had slapped her in the face during an argument at home and that when Mr. Cloughley responded to her residence, she disclosed to him the sexual abuse at that time.

Bud Cloughley would testify that on June 13, 2008, that while employed with DSS, he responded to Defendant's residence located within Spotsylvania County. Mr. Cloughley would testify that while at the residence, he had the opportunity to interview K.Y., where she disclosed that she had been sexually abused by her stepfather, Defendant, for the past four years. Mr. Cloughley would testify that he contacted Detective Twyla Demoranville from the Spotsylvania County Sheriff's Office to report the sexual abuse.

Detective Twyla Demoranville would testify that on June 13, 2008, while employed with the Spotsylvania County Sheriff's Office, she responded to Defendant's residence within Spotsylvania County. Det. Demoranville would testify that while at the residence, she had the opportunity to interview K.Y., who disclosed that she had been sexually abused by her stepfather, Defendant, for the past four years. K.Y. advised that the most recent incident had occurred either Monday or Tuesday of that same week, where she performed oral sex on Defendant at his request. K.Y. also reported to Det. Demoranville that she had kept a diary of 2006, where she made an entry regarding the abuse. Det. Demoranville collected the item into evidence and the Commonwealth would introduce the attached excerpt written by K.Y. as Exhibit A. Det. Demoranville would also testify that K.Y. told her that she can identify a mole on top of Defendant's penis and a mole on his testicle. Det. Demoranville would testify that based on that information, she executed a search warrant upon Defendant's person, and that pursuant to that search, she observed moles consistent with

K.Y.'s descriptions. Det. Demoranville took photographs of Defendant's penis which the Commonwealth would introduce as evidence in its case in chief.

Clarita Curtis would testify that on or about July 31, 2008, she received a letter by U.S. mail from her Husband, the Defendant. Ms. Curtis would testify that the letter had the return address of [Rappahannock Regional Jail ("RRJ")] and that she recognized the handwriting to be from Defendant. In that letter, Defendant made incriminating statements regarding the sexual abuse against K.Y., and the Commonwealth would introduce that letter as Exhibit B.

Clarita Curtis would also testify that on June 14, 2008, at 10:46 a.m., she received a collect telephone call from RRJ from her husband, the Defendant. In that conversation, Ms. Curtis would testify that she asked Defendant [if] he had done the things he had been accused of regarding K.Y. To that question, Defendant responded, "We did things, yeah, I won't lie about that . . . you remember when I talked to you about her putting her hands on me, it just escalated from that, she wouldn't leave me alone, and it just escalated . . . ." That telephone conversation was recorded by RRJ and the Commonwealth would introduce that recording as evidence in its case in chief.

Richard Stramer would testify that Defendant is his uncle by marriage and that in July, 2006, Defendant stopped by his auto shop. Mr. Stramer would testify that Defendant stated to him that he might be going back to prison. Mr. Stramer would testify that he asked Defendant why and Defendant stated that he had "been doing his 14 year old stepdaughter." Mr. Stramer would testify that Defendant stated that "he was 65 years old and if she was going to put it out there he was going to take it, that he was a man." Mr. Stramer would testify that Defendant stated that "she was from a different culture and that it was okay."

*Commonwealth v. Curtis*, No. CR08001071; CR08001099–CR08001104, R. at 31–32 (Va. Cir. Ct. filed Nov. 21, 2008). Both K.Y.'s diary entry and Curtis's letter substantially corroborated the above account of Curtis's guilt.[4] Curtis also offered a supplement to the above statement of facts.[5]

---

[4] For example, in his letter, Curtis acknowledged to his wife that he had suggested to K.Y. that Curtis and K.Y. engage in anal sex so K.Y. could avoid the possibility of getting pregnant.

[5] Curtis's supplement did not alter his guilt. For example, Curtis asserted that K.Y. had initiated the first kiss, that the first act of sexual intercourse had occurred in June of 2004, that the sexual intercourse did not occur more than once a week, and that sometimes he missed a week or two. (*See* Nov. 21, 2008 Tr. 16–17). Additionally, Curtis denied the conversation with Mr. Stramer occurred. (*See id.* at 17.)

By pleading guilty, Curtis avoided at least one mandatory term of life imprisonment. Prior to the incidents involving K.Y., Curtis had been convicted of rape. The Commonwealth initially charged Curtis with two counts of rape-second offense, which requires a mandatory term of life imprisonment under section 18.2-67.5:3 of the Virginia Code.[6] In exchange for Curtis's guilty plea, the Commonwealth agreed to amend Curtis's indictments to remove the prosecution's demand that Curtis receive the mandatory term of life imprisonment for a second conviction of rape under section 18.2-67.5:3 of the Virginia Code. (*See* Nov. 21, 2008 Tr. 2–3.)

### B. Motion to Withdraw the Guilty Pleas and Sentencing

On February 6, 2009, Curtis moved to withdraw his guilty pleas. Curtis asserted that counsel had "intimidated" him into pleading guilty. (Feb. 6, 2009 Tr. 12.) During the course of the hearing on the motion to withdraw, however, Curtis could not articulate any coherent, plausible basis for withdrawing his pleas. Specifically, after hearing Curtis's testimony the Circuit Court stated, "I've not heard anything that would indicate a foundation for allowing you to withdraw your guilty pleas, no misunderstanding or misapprehension of the facts that were asserted against you, no fraud upon you, no undue influence upon you." (*Id.* at 42.) The Circuit Court further stated, "I've heard no statement of any defense that would warrant the withdrawal of your guilty plea." (*Id.*) The Circuit Court denied Curtis's Motion to Withdraw his guilty plea.

---

[6] That statute provided:

> Any person convicted of more than one offense [of rape], when such offenses were not part of a common act, transaction or scheme, and who has been at liberty ... between each conviction shall, upon conviction of the second or subsequent such offense, be sentenced to life imprisonment and shall not have all or any portion of the sentence suspended, provided it is admitted, or found by the jury or judge before whom he is tried, that he has been previously convicted of [rape].

Va. Code Ann. § 18.2-67.5:3(A) (West 2004).

5

On February 9, 2009, Curtis appeared for sentencing. At sentencing, Curtis testified that K.Y. had instigated all of the sexual contact. Curtis testified that he only continued to engage in sex with K.Y. after the first act, because K.Y. threatened to go to the authorities. The Circuit Court sentenced Curtis to a total active term of imprisonment of sixty years.

### C. Direct Appeal and State Habeas

Curtis pursued an unsuccessful direct appeal and a petition for a writ of habeas corpus in the state courts. Because the details of those proceedings do not impact the Court's analysis of Curtis's current claims for relief, the Court declines to recite the details of those proceedings here.

### III. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Strickland*, 466 U.S. at 697.

The second component of *Strickland*, the prejudice component, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Curtis's assertion that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue of prejudice. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (*citing Hill*, 474 U.S. at 59-60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *Id.* at 369–70. In conducting this inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

In his claims, Curtis suggests that he would not have pled guilty to all of the charges if he had received better assistance from counsel regarding the rape charge and the forcible sodomy charge that required the prosecution to prove that the rape or sodomy had occurred against the will of the victim. Given the incontrovertible evidence of Curtis's guilt with respect to most of the charges and the certainty of a mandatory life sentence in the absence of Curtis's plea of guilty, Curtis simply cannot show any prejudice flowing from the deficiency of counsel. *See*

7

*Meyer*, 506 F.3d at 370 ("[S]ometimes it is the nature of the evidence, rather than the acts of the lawyer, that 'prejudice' the defendant."). For example, Curtis had no defense to the charge that he had raped K.Y. in that he had sexual intercourse with her when she was under the age of 13. K.Y.'s testimony concerning that charge would have been corroborated by K.Y.'s accurate description of Curtis's genitalia, by the letter Curtis sent to his wife, by his recorded telephone conversation to his wife from the RRJ, and by Mr. Stramer's testimony that Curtis had admitted to having sex with K.Y.[7] Upon his conviction for rape-second offense, the Circuit Court would have sentenced Curtis to a mandatory term of life imprisonment.

In exchange for Curtis's plea of guilty, the prosecution agreed to forego the mandatory term of life imprisonment provided by section 18.2-67.5:3 of the Virginia Code. Thus, a guilty plea offered Curtis's only chance to avoid a mandatory life sentence. "Faced with virtually no chance to succeed [in avoiding a conviction for rape] at trial," Curtis cannot demonstrate "that an objective defendant would have insisted on going to trial" to contest that a few of the sexual acts were committed with K.Y.'s consent,[8] when such a tactic would have guaranteed a sentence of life imprisonment. *Meyer*, 506 F.3d at 370. Accordingly, Claims 1(a) through 1(b)(ii) will be DISMISSED.

---

[7] Curtis denied that he had a conversation with Mr. Stramer wherein he acknowledged having intercourse with K.Y. Nevertheless, if Curtis had taken the stand to challenge Mr. Stramer's testimony, Curtis would have had to acknowledge that he had in fact had sexual intercourse with K.Y. when she was less than 13 years old.

[8] Given K.Y.'s age, K.Y.'s consent would not preclude Curtis's conviction for one count of rape, one count of forcible sodomy, and one count of aggravated sexual battery.

The Motion to Dismiss (Docket No. 3) will be GRANTED. The petition for a writ of habeas corpus will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[9]

An appropriate Order shall accompany this Memorandum Opinion.

Date: 6/19/12
Richmond, Virginia

/s/ _____
John A. Gibney, Jr.
United States District Judge

---

[9] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Curtis is entitled to further consideration in this matter.